**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NATIONAL SPECIALTY INSURANCE COMPANY, GEMINI INSURANCE COMPANY, JWB LOGISTICS CORP., TMD LOGISTICS CORP., and T.B. CHOYA EXPRESS, INC.<br><br>    Plaintiffs,<br><br>    v.<br><br>TUNKHANNOCK AUTO MART, INC.,<br><br>    Defendant. | CIVIL ACTION NO. 3:16-CV-00268<br><br>(JUDGE CAPUTO) |

**MEMORANDUM**

Presently before the Court is an Amended Motion to Dismiss (Doc. 11) filed by Defendant Tunkhannock Auto Mart, Inc. ("Tunkhannock"). In the instant action, Plaintiffs, National Speciality Insurance Company ("National"), Gemini Insurance Company ("Gemini"), JWB Logistics Corp. ("JWB"), TMD Logistics Corp. ("TMD"), and T.B. Choya Express, Inc. ("TB Choya"), seek contribution from Tunkhannock for a payment made to settle a state-court lawsuit. For the reasons that follow, Plaintiffs' Complaint (Doc. 1) will be dismissed without prejudice for failure to state a claim upon which relief can be granted.

**I. Background**

The facts as alleged in Plaintiffs' Complaint (Doc. 1) are as follows:

Plaintiffs' seek contribution from Tunkhannock for a payment made to settle a state-court lawsuit stemming from a motor vehicle accident that occurred on October 27, 2010. Around 11:37 p.m. on the night of the accident, non-party Thomas W. Punko, an

employee of Plaintiff JWB,[1] was operating a tractor trailer while making a delivery to Tunkhannock. Pursuant to his delivery instructions, Mr. Punko was required to pull into Tunkhannock's parking lot, turn around in the rear of the building, and pull out of the parking lot in a forward facing position after making the delivery. However, at the time of the delivery, Mr. Punko was unable to pull into Tunkhannock's parking lot due to parked automobiles, orange cones, and/or concrete barriers that Tunkhannock had placed in the lot. As such, Mr. Punko was forced to back his tractor trailer into Tunkhannock's lot in order to make his delivery. While he was backing the tractor trailer into the lot, the trailer blocked the center turn lane and north bound travel lane of State Route 29. At this time, non-party Jesse L. Prebola was driving a 1998 Buick Century Sedan traveling northbound on State Route 29. Mr. Prebola struck Mr. Punko's tractor trailer blocking his lane of travel, causing Mr. Prebola to suffer permanent physical injuries.

Following the accident, non-party Deborah Prebola, as Plenary Temporary Guardian of her son, Jesse Prebola, an incapacitated adult, filed suit in the Court of Common Pleas of Luzerne County (the "Prebola Action"). On October 24, 2012, Ms. Prebola filed an amended complaint, dismissing various defendants and adding the instant Defendant Tunkhannock as a defendant in the Prebola Action. The defendants named in the amended complaint were the instant Plaintiffs JWB, TMD, and TB Choya, Defendant Tunkhannock, and non-parties Mr. Punko; MFC Logistics, Inc.; Trucks on the Run Inc., a/k/a On the Run Delivery; River Street Idealease, LLC; Chopper Express, a/k/a Chopper 79; Chopper 79, LLC; Chopper 79 Logistics, LLC; Chopper Automotive, LLC; Chopper Express, Inc.; Chopper DDS, Inc.; and Chopper Express Transportation. (Ex. B, Doc. 7-2.)

---

[1] It is unclear whether Plaintiffs' maintain that Mr. Punko was an employee of JWB. *See infra* note 4.

On April 16, 2013, the parties in the Prebola Action participated in a mediation which led to the full and final settlement of Prebola's claims. At the mediation, all of the defendants in the Prebola Action, through their insurers Plaintiffs National and Gemini, contributed to the settlement amount accepted by Prebola, except for Tunkhannock and its insurer, Zurich. On May 17, 2013, Prebola signed a Settlement and Release Agreement under which Prebola received a settlement payment of $6,900,000.00[2] in exchange for releasing all claims against all parties arising out of the accident.[3] (*See* Settlement and Release Agreement §§ 1, 2, Doc. 1-2.). On June 7, 2013, Prebola executed an Addendum to the Settlement and Release Agreement. The Addendum states in part: "At the time of the Mediation it was fully contemplated by all parties and

---

[2]   Plaintiff National paid $1.9 million toward the settlement sum, and Plaintiff Gemini paid $5.0 million toward the settlement sum. (Settlement and Release Agreement § 2.)

[3]   The release executed by Prebola states in pertinent part:

> The Plaintiffs [Prebolas], in consideration of the promises, payments and other obligations as herein provided, fully release and forever discharge the Defendants and Releasees and all other persons, associations and corporations, whether or not named herein . . . from any and all causes of action, claims and demands of whatsoever kind on account of all known and unknown injuries, losses and damages sustained by the incapacitated Plaintiff, Jesse L. Prebola, as a result of or arising from or in any way related to the collision that occurred on October 27, 2010 on SR 29 in Eaton Township, Wyoming County, Pennsylvania, which collision was the subject of this action. The Plaintiffs do understand and agree that the acceptance of all payments in accordance with this Agreement are in full accord and satisfaction of all claims arising out of the aforesaid collision against the Defendants in the above-captioned action.

(Settlement and Release Agreement § 1.)

3

counsel in attendance that, while the claims of Plaintiffs were being settled, the rights of the settling Defendants as against the non-settling Defendant Tuckhannock [sic] Auto Mart for contribution and or indemnification were being preserved." (Addendum ¶ 3, Doc. 1-3.) The settling defendants in the Prebola Action were covered under insurance policies issued by instant Plaintiffs National and Gemini. The settlement proceeds were paid out of these insurance policies.

On February 2, 2016, instant Plaintiffs National, Gemini, JWB, TMD, and TB Choya filed this diversity suit, alleging Tunkhannock's actions prohibited Mr. Punko from pulling the tractor trailer into Tunkhannock's parking lot and inhibited Mr. Punko's ability to turn the tractor trailer around in the back of the lot. As such, Plaintiffs' contend that Tunkhannock was negligent in failing to provide clear access to the parking lot, which ultimately caused the accident. Plaintiffs seek contribution from Tunkhannock in accordance with its proportionate share of liability in causing the accident. On June 3, 2016, Defendant filed an Amended Motion to Dismiss, raising multiple grounds for dismissal, including that Plaintiffs' Complaint fails to state a claim under Federal Rule of Civil Procedure 12(b)(6). The Motion has been briefed and is ripe for review.

## II. Legal Standard

### A.   Federal Rules of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of her claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether a plaintiff will ultimately prevail. *Id.* A defendant bears the burden of

4

establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement required by Rule 8(a)(2) must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). As such, "[t]he touchstone of the pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts:  (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

5

unlawfully." *Iqbal*, 556 U.S. at 678. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

In deciding a motion to dismiss, the Court should consider the complaint, exhibits attached to the complaint, and matters of public record. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Pension Benefit Guar. Corp.*, 998 F.2d at 1196. The Court need not assume that the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions,'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

**B.    Pennsylvania Uniform Contribution Among Tortfeasors Act**

Under Pennsylvania law, contribution is only available among joint tortfeasors. *EQT Prod. Co. v. Terra Servs., LLC*, 179 F. Supp. 3d 486, 493 (W.D. Pa. 2016). The Pennsylvania Uniform Contribution Among Tortfeasors Act ("the Act"), 42 Pa. Cons. Stat. Ann. §§ 8321-8327, defines joint tortfeasors as "two or more persons jointly or severally liable in tort for the same injury to persons or property, whether or not judgment has been recovered against all or some of them." *Id.* § 8322. Parties may be found jointly liable for an injury "if their conduct 'causes a single harm which cannot be apportioned . . . even though [the actors] may have acted independently.'" *Mattia v. Sears, Roebuck & Co.*, 531 A.2d 789, 791 (Pa. Super. Ct. 1987) (quoting *Capone v. Donovan*, 480 A.2d 1249, 1251 (Pa. Super. Ct. 1984)). "In other words, a party can establish the joint tortfeasor relationship by showing either that both parties acted

together to commit the wrong, or that the parties' independent acts caused a single injury." *Small Bus. Admin. v. Progress Bank*, No. Civ.A. 03-3461, 2004 WL 2980412, at *10 (E.D. Pa. Dec. 22, 2004). The burden is on the party seeking contribution to establish a joint tortfeasor relationship. *See id.* ("Before seeking contribution, a party must first establish that it and the defendant are joint tort-feasors.").

In addition to demonstrating the existence of a joint tortfeasor relationship, a party seeking contribution must further demonstrate that it is entitled to seek contribution under the Act. When settlement occurs before the original plaintiff has proven his case at trial, a settling tortfeasor may seek contribution from a non-settling party if the settling tortfeasor: (1) demonstrates that he and the non-settling party are joint tortfeasors with respect to the original plaintiff, (2) has discharged the common liability or paid more than his pro rata share, and (3) has extinguished the liability of the non-settling party to the original plaintiff by virtue of the settlement. *Swartz v. Sunderland*, 169 A.2d 289, 291 (Pa. 1961); *see* 42 Pa. Cons. Stat. Ann. § 8324; *see also Nationwide Mut. Ins. Co. v. Phila. Elec. Co.*, 443 F. Supp. 1140, 1143 (E.D. Pa. 1977); *Mattia*, 531 A.2d at 791 (explaining that when a party seeks contribution in a separate action against a purported joint tortfeasor, it "must stand in the shoes of th[e] original plaintiff and prove that the new defendant was a joint tortfeasor in that his tortious conduct also caused the harm at issue"). Furthermore, the settling tortfeasor must also prove that the settlement figure was reasonable. *Nationwide Mut. Ins. Co.*, 443 F. Supp. at 1143.

"A joint tortfeasor's right to contribution is distinct from the original action." *Pa. Nat'l Mut. Cas. Ins. Co. v. Nicholson Constr. Co.*, 542 A.2d 123, 126 (Pa. Super. Ct. 1988). "The right of contribution is an equitable principle based on the understanding that 'as between the two tort-feasors [ ] contribution is not a recovery for the tort but the enforcement of an equitable duty to share liability for the wrong done.'" *Progress Bank*, 2004 WL 2980412, at *10 (quoting *Puller v. Puller*, 110 A.2d 175, 177 (Pa. 1955)); *see also Matter of Reading Co.*, 404 F. Supp. 1249, 1251 (E.D. Pa. 1975) (noting it is "well-

7

settled that in Pennsylvania recovery under the Uniform Contribution [Among Tortfeasors] Act is a recovery in assumpsit or contract rather than in tort"). At bottom, the Act recognizes that "[s]o long as the party seeking contribution has paid in excess of his or her share of liability, it would be inequitable . . . to deny that party's right to contribution from a second tortfeasor who also contributed to the plaintiff's injury." *Svetz v. Land Tool Co.*, 513 A.2d 403, 407 (Pa. Super. Ct. 1986).

### III. Discussion

**A.     Tunkhannock's Motion to Dismiss Under Rule 12(b)(6)**

Tunkhannock seeks dismissal of Plaintiffs' Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). In support of its Motion, Tunkhannock advances multiple grounds for dismissal, including the contention that the Complaint fails to state Plaintiffs were negligent themselves in causing the accident or otherwise identify Plaintiffs as joint tortfeasors. (Am. Mot. to Dismiss ¶ 41, Doc. 11; Br. in Supp. 6, 9, Doc. 15.) In response, Plaintiffs argue that an admission of liability is not required to claim the status of a joint tortfeasor (Br. in Opp'n 4-7, Doc. 17), but they do not otherwise respond to Tunkhannock's assertion that the Complaint fails to allege Plaintiffs' own negligence or specify their status as joint tortfeasors along with Tunkhannock. Because a necessary element of a contribution claim is that the contribution-seeking party is itself liable in tort to the original plaintiff, and because Plaintiffs' Complaint fails to allege facts which satisfy this element, the Court will dismiss Plaintiffs' Complaint for failure to state a claim.

A party can pursue a claim for contribution only if it has established that it was itself liable to the injured party for that party's injury. *Kirschbaum v. WRGSB Assocs.*, 243 F.3d 145, 156 (3d Cir. 2001) (citing 42 Pa. Cons. Stat. Ann. § 8324(a) (contribution only available among joint tortfeasors); 42 Pa. Cons. Stat. Ann. § 8322 (joint tortfeasor is, in part, one who is liable to plaintiff)). Therefore, a defendant cannot be held liable for

contribution without a showing that the defendant and the contribution-seeking party are joint tortfeasors. *See United States v. Union Corp.*, 277 F. Supp. 2d 478, 496 (E.D. Pa. 2003). Stated differently, a party may seek contribution only if he was also "liable in tort to the [original] plaintiff." *Mattia*, 531 A.2d at 791.

Plaintiffs' Complaint fails to state a claim for contribution against Tunkhannock because it does not allege that Plaintiffs JWB, TMD, and TB Choya are themselves tortfeasors. The Complaint alleges that Plaintiffs, through their insurers, discharged the common liability arising from the Prebola Action, that Tunkhannock's liability was extinguished by the settlement agreement and release, and that Tunkhannock's negligence was a direct and proximate cause of Prebola's accident. (Compl. ¶¶ 22, 27, 30-36.) However, the Complaint is devoid of any allegations that Plaintiffs JWB, TMD, and/or TB Choya were themselves liable in tort to Prebola for the injuries he sustained from the accident. *See Kirschbaum*, 243 F.3d at 156 ("A party pursuing [a] claim[] for contribution . . . can do so only if it has established that it was itself liable to the plaintiff for the plaintiff's injury."). The only allegation in the Complaint which potentially touches upon TMD's liability to Prebola is the vague assertion that TMD was engaged in the business of delivering auto parts to Tunkhannock. Similarly, with respect to TB Choya, the only allegation in the Complaint potentially bearing upon its liability is that TB Choya provided training, supervision, and direction to "drivers" for TMD and JWB. These one-sentence allegations fail to state that TMD or TB Choya is a joint tortfeasor. And with respect to JWB, the mere assertion that non-party Mr. Punko operated a tractor trailer on the night of the accident while "in the scope of his employment" with JWB fails to sufficiently allege that JWB is a joint tortfeasor, as there is no claim that JWB itself was negligent or that Mr. Punko, its purported employee,[4] was negligent. (*See* Compl. ¶¶ 9-

---

[4] The Court notes that there appears to be a dispute over which entity employed Mr. Punko when the accident occurred. (*See* Doc. 20, at 4.) It is unclear whether Plaintiffs have conceded that non-party Chopper 79, and not Plaintiff JWB as alleged originally in the Complaint, was Mr. Punko's employer at the relevant

10, 12.) Simply put, Plaintiffs never allege that they themselves committed a tort, which is necessary in order to establish a joint tortfeasor relationship with Tunkhannock. *See Slaughter v. Pa. X-ray Corp.*, 638 F.2d 639, 642 (3d Cir. 1981).

Instead, the allegations of negligent conduct in the Complaint are directed entirely at Tunkhannock. (*See id.* ¶¶ 14-16, 29-36.) The Complaint, as pled, fails to state that Plaintiffs are tortfeasors, which is a necessary element of a contribution claim. *See EQT Prod. Co. v. Terra Servs., LLC*, 179 F. Supp. 3d 486, 495 n.5 (W.D. Pa. 2016) (noting that dismissal would likely be appropriate if the pleadings of the party seeking contribution "generally lay[] all of the blame" with the party from whom contribution is sought and fail to "explain exactly how it may be found to be a joint tortfeasor"); *Bank v. City of Phila.*, 991 F. Supp. 2d 523, 538 (E.D. Pa. 2014) (dismissing contribution claim when contribution-seeking party failed to allege that it was a joint tortfeasor); *see also Slaughter*, 638 F.2d at 642 (explaining that in order to seek contribution, a settling party must "be a tortfeasor" and "establish joint liability with another. . . . [I]f the payor is not a tortfeasor, his payment would be that of a volunteer and would not support a claim for contribution"). The mere fact that Plaintiffs JWB, TMD, and TB Choya paid money, through their insurers, to settle the Prebola Action "is not a sufficient basis for recovery in the absence of an established joint tortfeasor relationship." *Progress Bank*, 2004 WL 2980412, at *10 (citing *Slaughter*, 638 F.2d at 642)). Because Plaintiffs' Complaint fails to allege a joint tortfeasor relationship with Tunkhannock, Tunkhannock's Amended Motion to Dismiss will be granted.[5]

## IV. Conclusion

---

time. (*See* Doc. 21, at 4-5.)

[5] Additionally, while the Court assumes Plaintiffs' claim of diversity of citizenship, if Plaintiffs elect to file an amended complaint with this Court they should state their jurisdictional grounds more completely. *See Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) ("A corporation is a citizen both of the state where it is incorporated and of the state where it has its principal place of business.").

For the above stated reasons, the Court will grant Tunkhannock's Amended Motion to Dismiss (Doc. 11) and dismiss Plaintiffs' Complaint (Doc. 1) without prejudice. Plaintiffs will be given leave to file an amended complaint consistent with this opinion if they so choose.

An appropriate order follows.

February 17, 2017　　　　　　　　　　　　　　　　　　/s/ A. Richard Caputo
Date　　　　　　　　　　　　　　　　　　　　　　　　　A. Richard Caputo
　　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge