# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATIONAL SPECIALTY INSURANCE COMPANY, GEMINI INSURANCE COMPANY, JWB LOGISTICS CORP., TMD LOGISTICS CORP., and T.B. CHOYA EXPRESS, INC.<br><br>    Plaintiffs,<br><br>    v.<br><br>TUNKHANNOCK AUTO MART, INC.,<br><br>    Defendant. | CIVIL ACTION NO. 3:16-CV-00268<br><br>(JUDGE CAPUTO) |

## MEMORANDUM

Presently before the Court is a Motion to Dismiss (Doc. 27) filed by Defendant Tunkhannock Auto Mart, Inc. ("Tunkhannock"). In the instant action, Plaintiffs National Speciality Insurance Company ("National"), Gemini Insurance Company ("Gemini"), JWB Logistics, Corp. ("JWB"), TMD Logistics Corp. ("TMD"), and T.B. Choya Express, Inc. ("TB Choya") seek contribution from Tunkhannock for a payment made to settle a state-court lawsuit. For the reasons that follow, Tunkhannock's Motion will be denied.

## I. Background

The well-pleaded facts as alleged in Plaintiffs' Amended Complaint (Doc. 24) are as follows:

Plaintiffs' seek contribution from Tunkhannock for a payment made to settle a state-court lawsuit stemming from a motor vehicle accident that occurred on October 27, 2010. Around 11:37 p.m. on the night of the accident, non-party Thomas W. Punko, who Plaintiffs admit was acting as an agent of JWB and TMD, was operating a tractor trailer on State Route 29 in Eaton Township, Wyoming County, Pennsylvania while making a delivery to Tunkhannock. Pursuant to his delivery instructions, Mr. Punko was required to pull into Tunkhannock's parking lot, turn around in the rear of the building, and pull out

of the parking lot in a forward facing position after making the delivery. However, at the time of the delivery, Mr. Punko was unable to pull into Tunkhannock's parking lot due to parked automobiles, orange cones, and/or concrete barriers that Tunkhannock had placed in the lot. As such, Mr. Punko was forced to back his tractor trailer into Tunkhannock's lot in order to make his delivery. While he was backing the tractor trailer into the lot, the trailer blocked the center turn lane and north bound travel lane of State Route 29. At this time, Jesse L. Prebola was driving a 1998 Buick Century Sedan traveling northbound on State Route 29. Mr. Prebola struck Mr. Punko's tractor trailer blocking his lane of travel, causing Mr. Prebola to suffer permanent physical injuries.

Following the accident, Deborah Prebola, as Plenary Temporary Guardian of her son, Jesse Prebola, an incapacitated adult, filed suit in the Court of Common Pleas of Luzerne County (the "Prebola Action"). On October 24, 2012, Ms. Prebola filed an amended complaint, dismissing various defendants and adding the instant Defendant Tunkhannock as a defendant in the Prebola Action. The defendants named in the amended complaint were the instant Plaintiffs JWB, TMD, and TB Choya, Defendant Tunkhannock, and non-parties Mr. Punko; MFC Logistics, Inc.; Trucks on the Run Inc., a/k/a On the Run Delivery; River Street Idealease, LLC; Chopper Express, a/k/a Chopper 79; Chopper 79, LLC; Chopper 79 Logistics, LLC; Chopper Automotive, LLC; Chopper Express, Inc.; Chopper DDS, Inc.; and Chopper Express Transportation. (Ex. B, Doc. 27-1.)

On April 16, 2013, the parties in the Prebola Action participated in a mediation which led to the full and final settlement of Prebola's claims. At the mediation, Plaintiffs National and Gemini, on behalf of their insureds JWB, TMD, and TB Choya, paid the entire settlement amount accepted by Prebola.[1] Tunkhannock did not contribute to the

---

[1] The Settlement Agreement indicates that National and Gemini were the insurers for all of the defendants originally named in the Prebola Action, including those that were initially removed via a stipulation entered into on October 24, 2012 (*see*

settlement amount. On May 17, 2013, Prebola signed a Settlement and Release Agreement under which Prebola received a settlement payment of $6,900,000.00[2] in exchange for releasing all claims against all parties arising out of the accident.[3] (*See* Settlement and Release Agreement §§ 1, 2, Doc. 24-1.). On June 7, 2013, Prebola executed an Addendum to the Settlement and Release Agreement. The Addendum states in part: "At the time of the Mediation it was fully contemplated by all parties and counsel in attendance that, while the claims of Plaintiffs were being settled, the rights of the settling Defendants as against the non-settling Defendant Tuckhannock [sic] Auto Mart for contribution and or indemnification were being preserved." (Addendum ¶ 3, Doc. 24-2.)

---

Compl. ¶¶ 20-21). (Settlement and Release Agreement § 2, Doc. 24-1.) National and Gemini are not the insurers for Tunkhannock. (*Id.*)

[2] National paid $1.9 million toward the settlement sum, and Gemini paid $5.0 million toward the settlement sum. (Settlement and Release Agreement § 2.)

[3] The release executed by Prebola states in pertinent part:

> The Plaintiffs [Prebolas], in consideration of the promises, payments and other obligations as herein provided, fully release and forever discharge the Defendants and Releasees and all other persons, associations and corporations, whether or not named herein . . . from any and all causes of action, claims and demands of whatsoever kind on account of all known and unknown injuries, losses and damages sustained by the incapacitated Plaintiff, Jesse L. Prebola, as a result of or arising from or in any way related to the collision that occurred on October 27, 2010 on SR 29 in Eaton Township, Wyoming County, Pennsylvania, which collision was the subject of this action. The Plaintiffs do understand and agree that the acceptance of all payments in accordance with this Agreement are in full accord and satisfaction of all claims arising out of the aforesaid collision against the Defendants in the above-captioned action.

(Settlement and Release Agreement § 1.)

Tunkhannock indicates that there is a pending state-court action in the Court of Common Pleas of Luzerne County in which all of the settling defendants in the Prebola Action are seeking contribution from Tunkhannock.[4] (Exs. F & G, Doc. 27-1.) Plaintiffs do not dispute the fact that this state-court action is pending. (*See* Doc. 29, at 5, 7.)

## II. Legal Standard

### A. Federal Rules of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of her claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether a plaintiff will ultimately prevail. *Id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement required by Rule 8(a)(2) must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555. However, mere

---

[4] More precisely, the caption of the attached state-court motion to redesignate parties does not name four parties originally named as defendants in the state-court action who were subsequently dismissed without prejudice via stipulation: Commercial Trailer Leasing, Inc., Paul's Truck Leasing, Inc., KVC Logistics Corp., and Quick Transport Solutions, Inc. (*See* Compl. ¶ 20; Ex. G, Doc. 27-1.) These four parties were, however, expressly referred to as "defendants" in the Settlement Agreement. (Ex. A, Doc. 24-1.) Thus, to clarify, it does not appear that all parties referred to as "defendants" in the Settlement Agreement are actively seeking contribution from Tunkhannock in the pending state-court action.

conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). As such, "[t]he touchstone of the pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

In deciding a motion to dismiss, the Court should consider the complaint, exhibits attached to the complaint, and matters of public record. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the

5

defendant has attached copies of the documents to the motion to dismiss. *Pension Benefit Guar. Corp.*, 998 F.2d at 1196. The Court need not assume that the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions,'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

**B.    Pennsylvania Uniform Contribution Among Tortfeasors Act**

Under Pennsylvania law, contribution is only available among joint tortfeasors. *EQT Prod. Co. v. Terra Servs., LLC*, 179 F. Supp. 3d 486, 493 (W.D. Pa. 2016). The Pennsylvania Uniform Contribution Among Tortfeasors Act ("the Act"), 42 Pa. Cons. Stat. Ann. §§ 8321-8327, defines joint tortfeasors as "two or more persons jointly or severally liable in tort for the same injury to persons or property, whether or not judgment has been recovered against all or some of them." *Id.* § 8322. Parties may be found jointly liable for an injury "if their conduct 'causes a single harm which cannot be apportioned . . . even though [the actors] may have acted independently.'" *Mattia v. Sears, Roebuck & Co.*, 531 A.2d 789, 791 (Pa. Super. Ct. 1987) (quoting *Capone v. Donovan*, 480 A.2d 1249, 1251 (Pa. Super. Ct. 1984)). "In other words, a party can establish the joint tortfeasor relationship by showing either that both parties acted together to commit the wrong, or that the parties' independent acts caused a single injury." *U.S. Small Bus. Admin. v. Progress Bank*, No. Civ.A. 03-3461, 2004 WL 2980412, at *10 (E.D. Pa. Dec. 22, 2004). The burden is on the party seeking contribution to establish a joint tortfeasor relationship. *See id.* ("Before seeking contribution, a party must first establish that it and the defendant are joint tort-feasors.").

In addition to demonstrating the existence of a joint tortfeasor relationship, a party seeking contribution must further demonstrate that it is entitled to seek contribution under the Act. When settlement occurs before the original plaintiff has proven his case

at trial, a settling tortfeasor may seek contribution from a non-settling party if the settling tortfeasor: (1) demonstrates that he and the non-settling party are joint tortfeasors with respect to the original plaintiff, (2) has discharged the common liability or paid more than his pro rata share, and (3) has extinguished the liability of the non-settling joint tortfeasor to the original plaintiff by virtue of the settlement. *Swartz v. Sunderland*, 169 A.2d 289, 291 (Pa. 1961); *see* 42 Pa. Cons. Stat. Ann. § 8324; *see also Progress Bank*, 2004 WL 2980412, at *10-*11; *Nationwide Mut. Ins. Co. v. Phila. Elec. Co.*, 443 F. Supp. 1140, 1143 (E.D. Pa. 1977); *Mattia*, 531 A.2d at 791 (explaining that when a party seeks contribution in a separate action against a purported joint tortfeasor, it "must stand in the shoes of th[e] original plaintiff and prove that the new defendant was a joint tortfeasor in that his tortious conduct also caused the harm at issue"). Furthermore, the settling tortfeasor must also prove that the settlement figure was reasonable. *Nationwide Mut. Ins. Co.*, 443 F. Supp. at 1143.

"A joint tortfeasor's right to contribution is distinct from the original action." *Pa. Nat'l Mut. Cas. Ins. Co. v. Nicholson Constr. Co.*, 542 A.2d 123, 126 (Pa. Super. Ct. 1988). "The right of contribution is an equitable principle based on the understanding that 'as between the two tort-feasors [ ] contribution is not a recovery for the tort but the enforcement of an equitable duty to share liability for the wrong done.'" *Progress Bank*, 2004 WL 2980412, at *10 (quoting *Puller v. Puller*, 110 A.2d 175, 177 (Pa. 1955)); *see also Matter of Reading Co.*, 404 F. Supp. 1249, 1251 (E.D. Pa. 1975) (noting it is "well-settled that in Pennsylvania recovery under the Uniform Contribution [Among Tortfeasors] Act is a recovery in assumpsit or contract rather than in tort"). At bottom, the Act recognizes that "[s]o long as the party seeking contribution has paid in excess of his or her share of liability, it would be inequitable . . . to deny that party's right to contribution from a second tortfeasor who also contributed to the plaintiff's injury." *Svetz v. Land Tool Co.*, 513 A.2d 403, 407 (Pa. Super. Ct. 1986).

### III. Discussion

7

On February 16, 2016, instant Plaintiffs National, Gemini, JWB, TMD, and TB Choya filed this diversity suit seeking contribution from Tunkhannock. (Doc. 1.) On June 3, 2016, Tunkhannock filed an Amended Motion to Dismiss. (Doc. 11.) On February 17, 2017, the Court granted Tunkhannock's Motion and dismissed Plaintiffs' Complaint, but provided Plaintiffs leave to amend. (Doc. 23.) On March 3, 2017, Plaintiffs filed an Amended Complaint. (Doc. 24.) On March 23, 2017, Tunkhannock filed the instant Motion to Dismiss. (Doc. 27.) Plaintiffs filed their Brief in Opposition on April 6, 2017. (Doc. 29.) The Motion is ripe for disposition.

A.  **The Doctrine of *Lis Pendens***

Tunkhannock argues primarily that the Court should dismiss Plaintiffs' Amended Complaint based on the state-law doctrine of *lis pendens*. Pennsylvania courts recognize the defense of *lis pendens*, which may be raised as a preliminary objection based on the pendency of a prior action. *See Crutchfield v. Eaton Corp.*, 806 A.2d 1259, 1262 (Pa. Super. Ct. 2002) (citing Pa. R. Civ. P. 1028(a)(6)). The doctrine allows a court to dismiss or stay proceedings if a prior action is pending and certain "common law unities are present."[5] *Davis Cookie Co., Inc. v. Wasley*, 566 A.2d 870, 874 (Pa. Super. Ct. 1989). Tunkhannock contends that the unities are present here, and that it would be prejudiced in having to defend itself in both the pending state-court action previously filed and the present federal action. (*See* Doc. 27 ¶¶ 26-36.)

However, it has long been recognized "that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction, for both the state and Federal courts have certain concurrent jurisdiction over such controversies, and when they arise between citizens of different states the

---

[5] The party pleading the defense of *lis pendens* must show "that the prior case is the same, the parties are the same, and the relief requested is the same." *Crutchfield*, 806 A.2d at 1262 (citing *Penox Techs., Inc. v. Foster Med. Corp.*, 546 A.2d 114, 115 (Pa. Super. Ct. 1988)).

8

Federal jurisdiction may be invoked, and the cause carried to judgment, notwithstanding a state court may also have taken jurisdiction of the same case." *McClellan v. Carland*, 217 U.S. 268, 282 (1910); *see Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 307-08 (3d Cir. 2009) (holding that only "extraordinary circumstances" justify a federal court abstaining due to parallel state-court proceedings and noting the six factors courts must consider in making this particular abstention determination, which Tunkhannock does not address) (citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 818-19 (1976)); *Manor Care of Camp Hill, PA, LLC v. Fleagle ex rel. Fritz*, No. 1:13-CV-02449, 2013 WL 6185604, at *2 (M.D. Pa. Nov. 25, 2013) ("Abstention is the 'extraordinary and narrow exception' to the 'virtually unflagging obligation' of the court to exercise its jurisdiction." (quoting *Colo. River*, 424 U.S. at 813, 817)). Indeed, the Pennsylvania Superior Court has recognized that the "test for determining the validity" of the defense of *lis pendens* is not the same when "the second suit . . . [is] brought in federal court." *Davis Cookie Co.*, 566 A.2d at 874 (citing to a district court case addressing *Colorado River* abstention).

Here, even assuming the proceeding in state court is indeed parallel to the present action, Tunkhannock has failed to demonstrate "extraordinary circumstances" justifying federal-court abstention based on parallel state-court proceedings. *See Nationwide Mut. Fire Ins. Co.*, 571 F.3d at 308-09 (noting that the "desirability of avoiding piecemeal litigation" is "[b]y far the most important factor" that a federal court should consider in deciding whether to abstain due to ongoing parallel state-court proceedings, and concluding that this factor is satisfied only where the law in question evinces "a strong federal policy against [such] litigation," which is not the case here (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983) and *Spring City Corp. v. Am. Bldgs. Co.*, 193 F.3d 165, 172 (3d Cir. 1999))); *Ryan v. Johnson*, 115 F.3d 193, 198 (3d Cir. 1997) ("The presence of garden-variety state law issues has not, in this circuit, been considered sufficient evidence of a congressional policy to consolidate multiple lawsuits for unified resolution in the state courts."). The

9

Motion to Dismiss does not address the relevant abstention factors outlined by the Supreme Court, and consequently Tunkhannock has not met its burden of demonstrating the existence of exceptional circumstances warranting abstention. *See Moore v. John S. Tilley Ladders Co., Inc.*, No. CIV. A. 92-5902, 1993 WL 46684, at *2 (E.D. Pa. Feb. 23, 1993).

Furthermore, Tunkhannock has failed to address the interplay between the state-law doctrine of *lis pendens* and the federal-court abstention doctrines announced by the Supreme Court. As such, Tunkhannock has not persuaded this Court to abstain based on the defense of *lis pendens*, especially considering that the application of this doctrine would allow parties to circumvent the more demanding abstention test prescribed by the Supreme Court in *Colorado River* and its progeny. *See Spellman v. Express Dynamics, LLC*, 150 F. Supp. 3d 378, 388-89 (D.N.J. 2015) (declining to apply New Jersey's first-filed rule to co-pending state and federal cases because the rule conflicted with the Supreme Court's instructions in *Colorado River*); *see also AXA Corp. Sols. v. Underwriters Reins. Corp.*, 347 F.3d 272, 278 (7th Cir. 2003) ("[T]opics such as forum non conveniens, lis pendens, and venue statutes. . . . address[] an organizational matter that is governed by the law of the sovereign that established the forum. In the case of a federal court, that sovereign is obviously the United States. We see no way for a federal court simultaneously to follow the Supreme Court's *Colorado River* doctrine and to apply [similar rules]. Given that conflict, and given the procedural nature of this problem, we conclude that the state statute [authorizing dismissal where there is another action pending between the same parties for the same cause] should not have played any role in the decision whether to retain or dispose of this litigation.").

Accordingly, Tunkhannock's request for this Court to dismiss or stay this action based on the doctrine of *lis pendens* is denied.

**B.     Rule 12(b)(7) and Rule 19 of the Federal Rules of Civil Procedure**

Tunkhannock mentions Rule 19 in its Motion and supporting Brief, arguing that the other defendants who settled in the state-court action are indispensable parties. (*See* Doc. 27, ¶¶ 24, 41; Doc. 28, at 5, 7, 10.) However, Tunkhannock fails to substantiate this basis for dismissal in any meaningful way. Indeed, although Tunkhannock fleetingly invokes Rule 19 and the term "indispensable parties" in miscellaneous portions of its Motion and Brief, it does not cite to any case law in support of this ground for dismissal and does not even attempt the two-step analysis prescribed by the Third Circuit to determine whether a party is subject to compulsory joinder under Rule 19. *See Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007). Tunkhannock has clearly failed to meet its "burden of showing why an absent party should be joined under Rule 19." *Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 635 F.3d 87, 97 (3d Cir. 2011); *see also Lombardi v. Allstate Ins. Co.*, No. 08-949, 2009 WL 1811540, at *4 n.3 (W.D. Pa. June 23, 2009) ("Arguments lacking any substantive or meaningful analysis are deemed to be undeveloped and wholly inadequate and may be disregarded by the court."). As such, the Court will deny Tunkhannock's Motion to Dismiss pursuant to Rules 12(b)(7) and 19.

### C. Rule 12(b)(6) of the Federal Rules of Civil Procedure

Lastly, Tunkhannock moves for dismissal on the ground that Plaintiffs have failed to state a claim upon which relief can be granted. (Doc. 27 ¶¶ 45-52; Doc. 28, at 10-11.) First, Tunkhannock contends that the Amended Complaint does not allege that National and Gemini are joint tortfeasors. (Doc. 28, at 11.) Second, Tunkhannock argues that the Settlement Agreement resolving the Prebola Action did not extinguish any liability on the part of Tunkhannock. (*Id.*) Tunkhannock's Motion to Dismiss based on these grounds will also be denied.[6]

---

[6] Again, Tunkhannock cites to no case law in support of its Rule 12(b)(6) arguments.

In order to state a claim for contribution, a settling tortfeasor must allege that he: (1) and the non-settling party are joint tortfeasors with respect to the original plaintiff, (2) has discharged the common liability or paid more than his pro rata share, and (3) has extinguished the liability of the non-settling joint tortfeasor to the original plaintiff by virtue of the settlement. *Swartz v. Sunderland*, 169 A.2d 289, 291 (Pa. 1961); *U.S. Small Bus. Admin. v. Progress Bank*, No. Civ.A. 03-3461, 2004 WL 2980412, at *10-*11 (E.D. Pa. Dec. 22, 2004); 42 Pa. Cons. Stat. Ann. § 8324. The Amended Complaint sufficiently alleges that Plaintiffs JWB, TMD, TB Choya, and Defendant Tunkhannock are joint tortfeasors with respect to the original plaintiff in the Prebola Action, that the Settlement Agreement discharged the common liability, and that Tunkhannock's liability to the original plaintiff was extinguished by virtue of the Settlement Agreement, to which Tunkhannock did not contribute. (*See* Compl. ¶¶ 24-29, 33-41.) At the motion to dismiss stage, Tunkhannock's contention that the Settlement Agreement did not extinguish any liability on its part because Prebola did not believe that she had a viable claim against Tunkhannock is unavailing, as the Court accepts all well-pleaded allegations as true and considers the undisputedly authentic documents attached.

Moreover, Tunkhannock's argument that there is no "factual support" for finding National and Gemini to be joint tortfeasors is undeveloped and unclear. Tunkhannock has presented the Court with no specific reason for why insurers cannot be named as plaintiffs in a contribution action when their insureds are claiming a joint-tortfeasor relationship with the defendant and the insurers have discharged the common liability by paying to settle claims on behalf of all alleged joint tortfeasors. *See, e.g.*, *MIXX Ins. Co. v. Epstein*, 937 A.2d 469, 470 n.1, 471 (Pa. Super. Ct. 2007) (illustrating a case in which an insurer and its insured brought an action seeking contribution in conjunction with one another). Accordingly, the Court will deny Tunkhannock's Motion to Dismiss for failure to state a claim.

## IV. Conclusion

For the above stated reasons, the Court will deny Tunkhannock's Motion to Dismiss. (Doc. 27.)

An appropriate order follows.

May 12, 2017 /s/ A. Richard Caputo
Date A. Richard Caputo
United States District Judge